IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MACKINAC TRIBE,<br><br>    Plaintiff,<br>vs.<br><br>THE HONORABLE SALLY JEWELL,<br>U.S. Secretary of the Interior,<br><br>    Defendant. | Case No. _____ |

## PETITION FOR DECLARATORY AND MANDAMUS RELIEF

  COMES NOW, Petitioner, MACKINAC TRIBE, by and through undersigned counsel, to petition the Court to determine that the MACKINAC TRIBE is a federally recognized Indian Tribe, and to order the Defendant, Secretary of the Interior, to conduct elections under the Indian Reorganization Act to adopt a draft proposed Constitution for such tribe, and such other relief as may be appropriate.

### I. THE PARTIES, JURISDICTION AND VENUE

  1. Plaintiff, Mackinac Tribe is the modern historical successor to the Mackinac/ Michilimackinac Indians who were signatories to the Treaty with the Ottawa and Chippewa concluded at the City of Detroit, Michigan on July 31, 1855, and constitute a federally recognized Indian tribe.

  2. Defendant, the Honorable Sally Jewell ("Secretary"), is the United States Secretary of the Interior.

  3. The Court has jurisdiction over the subject matter of this complaint under the terms of 28 USC § 1331 (Federal Questions), § 1361(Mandamus/Federal Official) and § 1362 (Indian Tribe Plaintiff).

1

4. Venue of this matter is properly before the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e), because the defendant officially resides in the District of Columbia and a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia.

## II.     FACTS

5. The Chippewa (Ojibwa) and Ottawa (Odawa) Indians are aboriginal and indigenous Algonquin Indian people who occupied areas east of the Mississippi River within the present confines of the northeastern portion of the present United States prior to European contact and settlement within such area.

6. From time immemorial the Chippewa and Ottawa Indians of North America were organized along band, village and locality basis, and not within a single tribal Nation.

7. Between the years 1783 to 1855, the United States collectively dealt with the Chippewa and Ottawa Indian bands as a single national entity deemed to be the Ottawa and Chippewa Nation for the convenience of the United States to effectuate land cessions from the Chippewa, Ottawa and other Indians. For example, the Treaty of 1836 was formally entered into by the United States and an entity called "the Ottawa and Chippewa Nation of Indians."

8. Prior to 1855 the United States negotiated and entered into more than 25 treaties with the Ottawa and Chippewa Nations.

9. In 1815, the Defendant's predecessor established the Mackinac Indian Agency and maintained such agency as the principal federal office through which relations with the Mackinac operated, and services provided to such Indians based upon their status as Indians.

10. In the above referenced treaties, the Ottawa and Chippewa Indians of Michigan were represented by participating chiefs from 42 bands of Indians of which 31 bands were Ottawa and

11 bands were Chippewa, including seven (7) bands roughly located in and around the Mackinac Straits between Big Bay D'Noc and Drummond Island, variously identified as Mackinac/Michilimackinac, or some variation thereof.

11. Of particular relevance, the Treaty of 1836 completed the Indian land cessions in Michigan, and was signed by many of the Mackinac chiefs and included in Article III, reservations for the Mackinac /Michilimackinac and other lands and waters of traditional use and occupancy for such Indians.

12. Between 1836 and 1855, Chippewa and Ottawa Indians of Michigan asserted various treaty violations and other equitable claims based upon the Treaty of 1836 and prior treaties, which were addressed in the Treaty of 1855.

13. During the negotiations of the 1855 treaty, Waw-Be-Geeg, a spokesman for the Michigan Indians stated, " At the Treaty of (18)36 our Fathers were in partnership with the Ottawa, but now that partnership is finished and we who come from the foot of Lake Superior wish to do business for 'ourselves.'"

14. In such negotiations, the United States and the Ottawa and Chippewa Indians agreed to the provisions of Article V of the Treaty of 1855, which provided: The tribal organization of said Ottawa and Chippewa Indians, except so far as may be necessary for the purpose of carrying into effect the provisions of this agreement, is hereby dissolved; and if at any time hereafter, further negotiations with the United States, in reference to any matters contained herein, should become necessary, no general convention of the Indians shall be called; but such as reside in the vicinity of any usual place of payment, or those only who are immediately interested in the questions involved, may arrange all matters between themselves and the United States, without the concurrence of other portions of their people, and as fully and conclusively, and with the

same effect in every respect, as if all were represented.[1]

15. The Treaty of 1855, specifically, referenced eight (8) "vicinities" for the residence of the Indians in question and for the "usual place of payment" of annuities under the 1836 and 1855 Treaties. Specifically, the "Macinac" vicinities were located at Townships 42 north, ranges 1 and 2 west (near St. Ignace, Michigan) and township 43 north, range 1 west, and township 44 north, range 12 west (near Manistique, Michigan).

16. In 1872, Secretary of the Interior Columbus Delano, a predecessor to the above named Defendant, implemented a policy of "administrative termination" with respect to the Michigan tribes who were signatories to the Treaty of 1855, including the Plaintiff, Mackinac Tribe.

17. In 1889, the Defendant's predecessor closed the Mackinac Agency, and federal services to the Mackinac, based upon their status as Indians, ceased.

18. Since that time, the Courts have held that Secretary Delano "*illegally* acted as if the Band's recognition had been terminated."[2]

19. Since that time, the Mackinac have continued to maintain tribal relations.

20. In 1910, the Bureau of Indian Affairs conducted an enrollment of the Mackinac Tribe, together with other Michigan Indian Tribes, known as the Horace B. Durant Roll, and identifying such Mackinac tribal members as members of such tribe for the purposes of receiving annuities and other services provided to Indian people because of their status as Indian.

21. In 1916, the Mackinac organized a claims committee to present equitable claims on behalf of the Mackinac to the United States.

22. On April 4, 1916 the Mackinac claims committee recorded a Power of Attorney at the

---

[1] 11 Stat. 624.
[2] *Grand Traverse Band of Ottawa and Chippewa Indians v. Office of U.S. Atty. for the Western District of Michigan*, 369 F.3d 960, 968 (6th Cir. 2004).

Mackinac County Recorder's Office naming David Corp for the purposes of pressing Mackinac claims.

23. In 1926, Secretary Hurbert Work, the Defendant's predecessor, requested and commissioned an investigation and report on the condition and affairs of Indians in the United States, which resulted in the report entitled "The Problem of Indian Administration," also known as the "Meriam Report".

24. The Meriam Report documented the continued existence of the Mackinac Bands as being the largest identifiable Indian group in Michigan with a population of 1,193 in 1926.

25. In 1972 the Indian Claims Commission decisions awarded judgments in Docket Nos. 18–E, 58, and 364 to the Ottawa and Chippewa Indians of Michigan, including the claims of the Mackinac.

26. In November, 1979, the Mackinac, through Michael Wright and the Consolidated Bahweting Ojibwa and Mackinac Tribe wrote a letter of intent to the Commissioner of the Bureau of Indian affairs requesting federal reaffirmation of the Mackinac's Indian's status as a federally recognized Indian tribe.

27. In 1997, the United States Congress enacted the Michigan Indian Land Claims Settlement Act,[3] which included distribution of settlement funds to certain individual members of the Michilmackinac (*i.e.*, the Mackinac).[4]

28. In the 1990's, the seven (7) historic bands of the Mackinac are organized into different groups, including the Mackinac Bands of Chippewa and Ottawa, the Mackinac Tribe of the Odawa and Ojibwa Indians (aka Bands of Point St. Ignace) and the Mackinac Bands of Ottawa and Chippewa Indians.

---

3   PUBLIC LAW 105–143.
4   *Id.* §§106(d).

29. On May 13, 1998, the Mackinac Bands of Chippewa and Ottawa Indians filed a letter of intent to file a petition seeking federal acknowledgment of the Mackinac pursuant to the Office of Federal Acknowledgement process [25 CFR 83 ] which was assigned designation as "Group 186" within the OFA docket.

30. In addition, all the other above referenced Mackinac organizations have sought or otherwise supported federal reaffirmation of the Mackinac.

31. In March and April of 2011 the various Mackinac groups came together and entered into a Compact of Association to Form a Coalition Tribal Government with Limited Powers for the Mackinac People or Bands (hereinafter referenced as "Compact").

32. The Compact formed a Coalition Tribal Government for the purposes of seeking reorganization of the Mackinac under the Indian Reorganization Act.

33. Prior to August 8, 2011, the Mackinac Coalition Tribal Government approved a draft Constitution for the Mackinac Tribe.

34. On or about, August 8, 2011, the Mackinac Coalition Tribal Government submitted a request to the Secretary of the Interior to call and conduct an election to approve the above referenced draft Constitution pursuant to the Indian Reorganization Act [ 25 USC § 476; 25 CFR Part 81].

35. The Defendant, her agents and officers, have failed to respond to such request.

## COUNT I
## DECLARATION OF TRIBAL STATUS

36. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

37. The Mackinac are a federally recognized Indian Tribe whose status has never been legally terminated.

38. The Mackinac are entitled to a declaratory judgment from this Court that they are a federally recognized Indian Tribe.

## COUNT II
## SECRETARY'S DUTY TO CONDUCT ELECTION

39. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

40. The Indian Reorganization Act provides in pertinent part that "Any Indian tribe shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws, and any amendments thereto," [25 USC § 476(a)].

41. The Indian Reorganization Act further provides in pertinent part "The Secretary shall call and hold an election as required by subsection (a) of this section … within one hundred and eighty days after the receipt of a tribal request for an election to ratify a proposed constitution and bylaws, or to revoke such constitution and bylaws." [25 USC § 476(c)].

42. The Mackinac is an Indian Tribe.

43. The Mackinac have requested the Secretary to hold an election to ratify a proposed tribal constitution.

44. More than one hundred and eighty (180) days have passed since such request.

45. The Mackinac are entitled to judgment ordering the Defendant to conduct an election under the Indian Reorganization Act of Mackinac tribal members to adopt the proposed constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court to issue orders:

1. That the Mackinac are a federally recognized Indian Tribe,

2. Directing the Defendant to conduct an election under the Indian Reorganization Act of Mackinac tribal members to adopt the proposed constitution, and

3. Such other relief as may be appropriate.

        Respectfully submitted,

        MACKINAC TRIBE

Dated: March 20, 2014       /s/ Ryan C. Posey_____
        By:  Ryan C. Posey (D.C. Bar #1000581)
        BODE & GRENIER, LLP
        1150 Connecticut Avenue, N.W.
        9th Floor, Connecticut Building
        Washington, D.C. 20036
        (202) 828-4100
        (202) 828-4130 (fax)
        *Counsel for Plaintiff*