**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MACKINAC TRIBE, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | Civ. No. 14-cv-0456 (KBJ) |
| ) | |
| SALLY JEWELL, ) | |
| ) | |
| DEFENDANT. ) | |

## MEMORANDUM OPINION

Indian tribes generally operate within a different legal framework than other political entities within the United States. Under federal law, tribes are entitled to certain benefits, including access to federal funding for healthcare, education, and other social programs, 25 U.S.C. § 13, and are also subject to certain restrictions, including a limited right to sell tribal land, 25 U.S.C. § 177. Moreover, because a tribe retains some "inherent sovereign authority" independent of the United States and the state in which it is located, *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991), Indian tribes enjoy a "government-to-government" relationship with the United States, *Cal. Valley Miwok Tribe v. Jewell*, No. 11-CV-00160 (BJR), 2013 WL 6524636, *97 (D.D.C. Dec. 13, 2013). Significantly, however, before an Indian tribe can qualify for this special status, it must be "recognized" by the United States and must organize a tribal government. *See Cal. Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1264 (D.C. Cir. 2008).

Plaintiff Mackinac Tribe aspires to attain the legal status of a recognized Indian tribe. Plaintiff maintains that, although it has not sought formal recognition and

reorganization through the administrative process that the Department of Interior prescribes, the United States government recognized the Mackinac Tribe in an 1855 treaty, and thus the Mackinac Tribe is entitled to the benefits that recognized Indian tribes enjoy under federal law.  Plaintiff has filed the instant lawsuit against Interior Secretary Sally Jewell, asking this Court for both a declaration that the Mackinac Tribe is a federally recognized Indian tribe for the purpose of the Indian Reorganization Act ("IRA"), 25 U.S.C. § 476, and an order directing the Secretary to aid Plaintiff in organizing a tribal government pursuant to that statute.

Before this Court at present is Defendant's motion to dismiss Plaintiff's compliant on various grounds, including sovereign immunity and the failure to exhaust administrative remedies.  Plaintiff responds that Congress has waived sovereign immunity for actions of this nature, and also that the Mackinac Tribe need not follow the agency's formal administrative recognition process, which, according to Plaintiff, is not the exclusive path to reorganization under the IRA.  As explained fully below, this Court concludes that Congress has waived the immunity of the United States with respect to Plaintiff's claims; however, the Court also holds that Plaintiff must exhaust its administrative remedies by undergoing the administrative process for formal recognition before it may file a lawsuit seeking the benefits of the IRA.  And because there is no genuine issue of material fact regarding the Mackinac Tribe's failure to exhaust its administrative remedies prior to bringing the instant action, the Secretary's Motion for Summary Judgment (as the Court has construed her Motion to Dismiss) will be **GRANTED**.  A separate order consistent with this opinion will follow.

I.     **BACKGROUND**

A.        **Federal Recognition And Its Statutory Benefits**

Federal "recognition" of an Indian tribe is a term of art that conveys a tribe's

legal status vis-à-vis the United States—it is *not* an anthropological determination of

the authenticity of a Native American Indian group.  *See* Mark D. Myers, *Federal*

*Recognition of Indian Tribes in the United States*, 12 Stan. L. & Pol'y Rev. 271, 271

(2001) ("Presently, the recognition process is widely misunderstood . . . as conferring

legitimacy.  Recognition is a certification and documentation process, not a

transformative one; it is analogous to a citizen's obtaining a passport, not an alien's

naturalization." (internal quotation marks and citation omitted)).  Federal recognition

specifically denotes "the federal government's decision to establish a government-to-

government relationship by recognizing a group of Indians as a dependent tribe under

its guardianship[,]" *id*. at 272, and such recognition "is a prerequisite to the protection,

services, and benefits from the Federal Government available to Indian tribes by virtue

of their status as tribes," 25 C.F.R. § 83.2.

Notably, for hundreds of years, there was no uniform procedure for recognizing

Indian tribes, and tribes were often recognized through treaties, legislation, and judicial

decisions.  *See* Felix Cohen, Handbook of Federal Indian Law § 3.02[4]–3.02[5] at 139–

41.  Consequently, tribal recognition law developed through centuries of disjointed

theories, conflicting policies, and shifting attitudes of various branches of the United

States government towards tribes.  *See* William W. Quinn, Jr., *Federal Acknowledgment*

*of American Indian Tribes: Authority, Judicial Interposition, and 25 C.F.R. § 83*, 17

Am. Indian L. Rev. 37, 39–44 (1992).  This system created "anomalies . . . in which

Indian tribes could be [recognized] for some purposes (*e.g.*, depredations or takings claims) but not for others (*e.g.*, the provision of services and benefits to tribes by the United States)." *Id*. at 43. Fortunately, "Congress, the administration, the national Indian organization, and many tribal groups" worked together to resolve this "longstanding and very difficult problem," and in 1978, the Department of the Interior promulgated uniform procedures by which Indian tribes may obtain recognition and thereby establish a government-to-government relationship with the United States. 43 Fed. Reg. 39,361 (Sept. 5, 1978); *see also* 25 C.F.R. pt. 83, *Procedures for Establishing That an American Indian Group Exists as an Indian Tribe*.[1] The procedures—called the "Part 83 Process"—allow any Indian group to apply for federal recognition by submitting a petition to the Department of the Interior with "detailed, specific evidence," 25 C.F.R. § 83.6, that proves the group is a "political and social community that is descended from a historic tribe," *U.S. Gov't Accountability Office, GAO-02-49, Indian Issues: Improvements Needed in Tribal Recognition Process* 1 (2001), and "comprises a distinct community at present," 25 C.F.R. § 83.7. *See also* Barbara N. Coen, *Tribal Status Decision Making: A Federal Perspective on Acknowledgment*, 37 New Eng. L. Rev. 491, 496–97 (2003) ("The underlying premise of this requirement— to demonstrate continuous tribal existence of the group—is that a tribe is a political, not a racial, classification.").[2]

---

[1] These regulations were revised in 1994, but the criteria for tribal recognition—sometimes referred to as "acknowledgment" of tribal status—remained the same. *See* 59 Fed. Reg. 9,280 (Feb. 25, 1994); *Miami Nation of Indians of Ind., Inc. v. Babbitt*, 112 F. Supp. 2d 742, 758 (N.D. Ind. 2000); 25 C.F.R. pt. 83.

[2] Under the Part 83 Process, a tribe that seeks recognition must establish that: (a) the tribe "has been identified as an American Indian entity on a substantially continuous basis[;]" (b) the tribe comprises a "distinct community" at present; (c) the tribe "has maintained political influence or authority over its

Once the Interior Department establishes that a tribe is a recognized political entity through the Part 83 Process, the tribe may seek to reorganize itself pursuant to the Indian Reorganization Act.  *See* 25 U.S.C. § 476; *see also* 25 C.F.R. § 81, *Tribal Reorganization Under a Federal Statute*.  In adopting the IRA's reorganization procedures, Congress "specifically intended to encourage Indian tribes to revitalize their self-government," *Fisher v. Dist. Court*, 424 U.S. 382, 387 (1976), thereby reversing prior policies of the federal government that had "destroyed Indian social and political institutions," Hearings on H.R. 7902 before the House Comm. on Indian Affairs, 78 Cong. Rec. 11,729 (1934).  Thus, while tribal recognition is the establishment of a government-to-government relationship with the United States, reorganization is a separate process pursuant to which the United States government promotes the development of the governing structure of the newly recognized Indian tribe.

The IRA states that "[a]ny Indian tribe shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws, and any amendments thereto[.]"  25 U.S.C. § 476(a).  The statute further provides that the constitution a tribe so adopts "shall become effective" if it is

> (1)     ratified by a majority vote of the adult members of the tribe or tribes at a special election authorized and called by the Secretary under such rules and regulations as the Secretary may prescribe; and
> (2)     approved by the Secretary [of the Interior Department] pursuant to subsection (d) of this section.

---

members as an autonomous entity from historical times until the present[;]" (d) the tribe has submitted a "governing document including its membership criteria[;]" (e) the tribe's members "descend from a historical Indian tribe or from historical Indian tribes which combined and functioned as a single autonomous political entity[;]" (f) the tribe's membership "is composed principally of persons who are not members of any acknowledged North American Indian tribe[;]" and (g) that Congress has not "expressly terminated or forbidden" a federal relationship with the group.  25 C.F.R. § 83.7.

*Id.* Moreover, the IRA also specifically addresses the content of a tribal constitution, requiring the document to "vest in such tribe or tribal council" various "rights and powers[,]" including the right to "employ legal counsel; to prevent the sale, disposition, lease, or encumbrance of tribal lands . . . ; and to negotiate with the Federal, State, and local governments."  25 U.S.C. § 476(e).[3]

Significantly for present purposes, in addition to authorizing a tribal constitution and setting forth other various rights, powers, privileges and immunities of Indian tribes, the IRA also speaks directly to the duty of the Secretary of the Interior Department to "call and hold an election" for ratification of the tribe's constitution.  25 U.S.C. § 476(c)(1); *see also Thomas v. United States*, 189 F.3d 662, 664 (7th Cir. 1999) ("Although these elections lay the very foundation for tribal self-governance, they must be called, held, and approved by the United States Secretary of the Interior." (citing 25 U.S.C. § 476)). The process begins with the tribe's submission to the Secretary of a request for an election to ratify its proposed constitution.  *See* 25 U.S.C. § 476(c)(1)(A); 25 C.F.R. § 81.5(a).  The Secretary's duty to hold the ratification election is nondiscretionary: once the Secretary receives such a request, the Secretary "shall" call an election within 180 days, 25 U.S.C. § 476(c)(1)(A), and in the meantime, the Secretary reviews the legality of the tribe's proposed constitution, *id*. § 476(c)(2)(B). The IRA provides that, if the tribe votes to adopt the proposed constitution, then the

---

[3] It is clear that Congress sought to promote effective tribal self-governance by emphasizing and authorizing the adoption of a tribal constitution that confers rights and powers—much like the constitutions of the United States and of the individual States are important foundational documents for the establishment and operation of those governments.  *See* 25 C.F.R. § 81.1(g); *see also* Felix Cohen, Handbook of Federal Indian Law § 4.05[3] at 271–72 ("Tribal constitutions address basic tribal powers in such important areas as membership, boundaries, jurisdiction, land use, elections, and the allocation of authority within the tribal governing structure.").  In this respect, then, a tribe's reorganization under the IRA can be viewed as the capstone of a tribe's formation of the separate government that the federal recognition process permits.

Secretary must approve the tribe's constitution within 45 days of the election "unless the Secretary finds that the proposed constitution . . . [is] contrary to applicable laws." *Id*. § 476(d)(1).  Moreover, the statute clarifies that if the Secretary fails to act timely in response to the results of the ratification election—*i.e.*, "[i]f the Secretary does not approve or disapprove the constitution . . . within the forty-five days"—then "the Secretary's approval shall be considered as given."  *Id.* § 476(d)(2).  Furthermore and finally, the IRA states that "[a]ctions to enforce the provisions of this section may be brought in the appropriate Federal district court."  *Id.*

## B.        The Instant Claims And Defenses

Plaintiff is the "modern historical successor" of the Mackinac Tribe, an Algonquin Indian people who lived in what is now the state of Michigan prior to European settlement of North America.  (Compl. ¶¶ 1, 5, 15.)[4]  In 2011, the Mackinac Tribe submitted to the Department of the Interior a request for the organization of a constitutional election pursuant to section 476(a) of the IRA.  (*See id*. ¶ 34.)  According to Plaintiff's complaint, the Interior Department not only failed to call the requested election, it did not even respond to the Mackinac's request.  (*See id*. ¶ 35.)

Approximately three years later, on March 2, 2014,  Plaintiff filed a two-count complaint in this Court seeking a declaration that the Mackinac Tribe is a federally recognized Indian tribe for IRA purposes and requesting an order directing the Interior Secretary to hold a constitutional election so that the Mackinac can organize a tribal government pursuant to the IRA.  (*See* Compl. ¶¶ 36-45.)  Although the complaint does

---

[4] Because this Court considers Plaintiff's claims in the context of Defendant's motion to dismiss, the Court accepts the allegations in Plaintiff's complaint as true and grants Plaintiff the benefit of all inferences that can be derived from the facts alleged.  *See Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

not state that the Mackinac have undertaken the formal Part 83 recognition process, Plaintiff maintains that the federal government recognized the Mackinac Tribe in a treaty between the United States and several different groups of Michigan Indians in 1855, and as such, the tribe asserts that it is entitled to the benefits of the IRA.  (*See* Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp."), ECF No. 10, at 32-33.)[5]

Instead of answering Plaintiff's complaint, Defendant has moved to dismiss it. (*See* Def.'s Mot. to Dismiss, ECF No. 7.)  The primary thrust of Defendant's motion is the argument that this Court lacks subject matter jurisdiction over Plaintiff's claims because "Plaintiff has failed to set forth any waiver of the United States' sovereign immunity."  (Def.'s Mem. of Points and Authorities in Supp. of its Mot. to Dismiss ("Def.'s Mem."), ECF No. 7-1, at 21; *see also* Def.'s Reply Mem. in Supp. of its Mot. to Dismiss ("Def.'s Reply"), ECF No. 12, at 21.)  On this basis, Defendant maintains that Plaintiff's case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  (*See* Def.'s Mem. at 22.)  Defendant also contends that, even if the Court moves beyond the threshold issue of sovereign immunity, the Court should dismiss Plaintiff's case pursuant to Rule 12(b)(6) because Plaintiff failed to exhaust the established administrative process for federal recognition—namely, the Part 83 Process. (*See id*. at 11 (citing Compl. ¶¶ 26, 29).)  Moreover, according to Defendant, "Plaintiff's failure to exhaust the administrative acknowledgment process is also fatal to Plaintiff's claim that it is entitled to an election conducted by the Secretary of the Interior" because recognition through the Part 83 Process is a mandatory prerequisite to

---

[5] Citations to documents that the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

having the Secretary call a constitutional election under the IRA.  (Def.'s Mem. at 35–36.)

With respect to the sovereign immunity issue, Plaintiff argues that subsection (d)(2) of the IRA specifically provides that actions to enforce provisions of the IRA may be brought in federal court, and insofar as Count II of the complaint seeks an order directing the Secretary to conduct an election pursuant to the IRA, Congress has clearly waived the United States' sovereign immunity with respect to this suit.  (*See* Pl.'s Opp. at 19–20.)  Responding to Defendant's argument that Plaintiff must nevertheless first seek formal recognition through the Part 83 process, Plaintiff asserts that "there is no requirement that a tribe need go through a Part 83 recognition process prior to applying for reorganization under the IRA."  (*Id*. at 36.)  Instead, Plaintiff contends that the Mackinac Tribe was previously recognized by the federal government in a treaty between the United States and various Michigan Indian groups (*see id*. at 28–31), and thus, the Mackinac Tribe has already satisfied the IRA's recognition requirement, so there is no need for it to undertake the administrative process for recognition (*see id*. at 31).

This Court held a hearing on Defendant's motion to dismiss Plaintiff's complaint on January 29, 2015.

## II.    ANALYSIS

As explained above, the Mackinac Tribe has filed suit against the Secretary of the Interior Department in her official capacity, asking this Court to (1) declare that it is a federally recognized Indian tribe for the purpose of the IRA, and (2) order the Secretary to conduct a constitutional election for the Mackinac Tribe as part of its

reorganization effort, pursuant to 25 U.S.C. § 476(a).  (*See* Compl. ¶¶ 38, 41–43, 45.)
The Interior Department insists that the Mackinac Tribe is not entitled to a
constitutional election or any other reorganization benefits under the IRA because it has
not been formally recognized through the agency's Part 83 Process (*see* Def.'s Mem. at
10-12; Def.'s Reply at 6); moreover, as a threshold matter, the agency contends that this
Court cannot even address the merits of Plaintiff's claims regarding its status and
entitlements because Plaintiff's lawsuit is barred by sovereign immunity.[6]  For the
reasons explained below, this Court finds that the Administrative Procedure Act's
waiver of sovereign immunity applies to permit Plaintiff's claims to proceed and
thereby thwarts Defendant's motion to dismiss for lack of subject matter jurisdiction
under Rule 12(b)(1).  However, because Plaintiff has conceded that it has not exhausted
its administrative remedies prior to filing this lawsuit, this Court concludes that
summary judgment must be granted in Defendant's favor and this suit must be
dismissed.

### A.      Applicable Legal Standards

#### 1.      The Sovereign Immunity Doctrine

"It is an established principle of jurisprudence in all civilized nations that the
sovereign cannot be sued in its own courts, or in any other, without its consent and

---

[6] It is true that a claim brought against a federal official for acts performed within her official capacity
qualifies as a suit against the sovereign.  *See Dugan v. Rank,* 372 U.S. 609, 620 (1963); *Larson v.
Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 693 (1949).  There is an exception to this general
rule:  a suit brought against an official for an action taken in her official capacity is *not* considered to
be a suit against the sovereign if the plaintiff maintains that the official has performed acts that are
unconstitutional or beyond statutory authority.  *See Pollack v. Hogan*, 703 F.3d 117, 119-20 (D.C. Cir.
2012) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) (explaining that
actions that transgressions of constitutional or statutory limitations are deemed individual and not
sovereign actions); *see also Dugan v. Rank*, 372 U.S. 609 (1963)).  Plaintiff does not allege that this
exception applies here; thus, as Defendant asserts, the Mackinac Tribe's complaint against the Interior
Secretary implicates the doctrine of sovereign immunity.  *C.f. Pollack v. Hogan*, 703 F.3d 117, 119-20
(D.C. Cir. 2012).

permission." *Beers v. State*, 61 U.S. 527, 529 (1857).  Consequently, the defense of

sovereign immunity, if applicable, divests a federal court of jurisdiction over a

plaintiff's suit against the sovereign.  *See Steel Co. v. Citizens for a Better Env't*, 523

U.S. 83, 88–89 (1998); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d

438, 449 (D.C. Cir. 1990); *see also* 14 Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice and Procedure* § 3655 (3d ed.) ("Although the United States district courts

have general subject matter jurisdiction over actions brought by federal agencies or

officers who are authorized to sue, there is no corresponding general statutory

jurisdiction to entertain suits against federal agencies and officers.").  Notably,

sovereign immunity is a privilege, not an imperative; therefore, Congress "may, if it

thinks proper, *waive* this privilege, and permit [the United States] to be made a

defendant in a suit by individuals, or by another State." *Beers v. State*, 61 U.S. at 529

(emphasis added).  A waiver of sovereign immunity is thus effectively a grant of

jurisdiction in cases in which the sovereign has been sued; the waiver gives courts the

power to hear a claim against the United States.  *See United States v. Mitchell*, 463 U.S.

206, 212 (1983).

It is by now well established that "[a] waiver of sovereign immunity cannot be

implied but must be unequivocally expressed" in statutory text.  *Irwin v. Dep't of*

*Veterans Affairs*, 498 U.S. 89, 95 (1990) (internal quotation marks and citation

omitted).  This means that "there can be no consent by implication or by use of

ambiguous language." *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 659

(1947).  Nor can "[a] statute's legislative history [] supply a waiver that does not appear

clearly in any statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  "An Act of

Congress is not unambiguous, and thus does not waive immunity, if it will bear any 'plausible' alternative interpretation." *Dep't of Army v. Fed. Labor Relations Auth.*, 56 F.3d 273, 277 (D.C. Cir. 1995) (citing *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992)); *see also Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) ("Congress need not use magic words to waive sovereign immunity, but the language it chooses must be unequivocal and unambiguous.").  Thus, any ambiguity as to whether or not a certain statutory provision constitutes a waiver of sovereign immunity must be construed "in favor of immunity." *United States v. Williams*, 514 U.S. 527, 531 (1995).  Additionally, even when there is an explicit waiver of sovereign immunity, "the Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." *Nordic Vill.*, 503 U.S. at 34 (citations and internal quotation marks and alterations omitted).   Put another way, the government may have waived its sovereign immunity only under specified circumstances, and any "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian,* 453 U.S. 156, 161 (1981).

A plaintiff who files an action against the United States must demonstrate that there has been a waiver of sovereign immunity that is applicable to the claims plaintiff has brought in order to satisfy the plaintiff's burden of establishing that the court has jurisdiction over the complaint.  *See Kelley v. Fed. Bureau of Investigation*, No. CV 13-0825 (ABJ), 2014 WL 4523650, at *19 (D.D.C. Sept. 15, 2014).  Accordingly, "a plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush,*

448 F. Supp. 2d 198, 200 (D.D.C. 2006) (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)).

"In ruling upon a motion to dismiss brought under Rule 12(b)(1), a court must construe the allegations in the complaint in the light most favorable to the plaintiff." *Scolaro v. Dist. Of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citation omitted). "But where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citations omitted). In this regard, the procedures applicable to a motion brought under 12(b)(1) differ from those that apply to a Rule 12(b)(6) motion to dismiss, pursuant to which the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Thus, "[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion" than in resolving a 12(b)(6) motion for failure to state a claim, because "subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, [and] a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its judicial authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (citation omitted).

### 2.   The Exhaustion Doctrine

Another "long-settled rule of judicial administration[,]" *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50 (1938), is the principle that a court that has been

asked to compel an agency to act "will stay its hand until the plaintiff has exhausted whatever internal remedies the agency provides[.]" *Glisson v. Forest Service*, 55 F.3d 1325, 1326 (7th Cir. 1995); *see also Reiter v. Cooper*, 507 U.S. 258, 269 (1993) ("Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed.").[7]  Under this doctrine, a plaintiff's failure to pursue an administrative process that could remedy plaintiff's claims will preclude judicial review of agency action, so long as the purposes of administrative exhaustion support such bar.  *Wilbur v. C.I.A.*, 355 F.3d 675, 677 (D.C. Cir. 2004).

Exhaustion has three main purposes: "'giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review[.]'"  *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) ((quoting *Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409 (D.C. Cir. 1998)); *see also Benoit v. U.S. Dep't of Agric.*, 577 F. Supp. 2d 12, 23 (D.D.C. 2008) ("Even when, as in this case, exhaustion is not a jurisdictional prerequisite to judicial review, exhaustion of administrative remedies is generally required so that the agency has an opportunity to exercise its discretion and

---

[7] "The word 'exhaustion' now describes two distinct legal concepts," the first concept being "a judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court," and the second concept being a statutory requirement of "resort to the administrative process as a predicate to judicial review." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004).  Neither Plaintiff nor Defendant argues that exhaustion is jurisdictional here, and the IRA does not contain an express exhaustion provision. Therefore, this Court will only consider the prudential requirement. *See Vermont Dep't of Pub. Serv. v. United States*, 684 F.3d 149, 156 (D.C. Cir. 2012) ("We presume exhaustion is non-jurisdictional unless Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." (internal quotation marks and citation omitted)).

expertise on the matter and to make a factual record to support its decision." (internal quotation marks, alterations, and citation omitted)).  In other words, the prudential exhaustion requirement ensures that plaintiffs do not file lawsuits against the United States in federal court as a means of bypassing the regulatory framework that the Executive has adopted to resolve disputes in the first instance.  *See James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137 (D.C. Cir. 1987) ("[W]here Congress has delegated certain initial decisions to the Executive Branch, exhaustion of available administrative remedies is generally a prerequisite to obtaining judicial relief for an actual or threatened injury[.]"); *Shinnecock Indian Nation v. Kempthorne*, No. 06-CV-5013 JFB ARL, 2008 WL 4455599, at *18 (E.D.N.Y. Sept. 30, 2008) ("[A]fter passage of the regulations, it is abundantly clear that the judiciary should not intervene before exhaustion of the administrative procedures has taken place.").

    a.      *Motions To Dismiss A Complaint On Exhaustion Grounds*

"[T]he failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of pleading and proving." *Howard v. Gutierrez*, 474 F. Supp. 2d 41, 49 (D.D.C. 2007).  However, in evaluating a Rule 12(b)(6) motion, the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624.  Therefore, "a defendant may raise an affirmative defense (such as exhaustion of administrative remedies) under Rule 12(b)(6) only 'when the facts that give rise to the defense are clear from the face of the complaint.'" *Shane v. United States*, No. CIV.A.07-577(RBW), 2008 WL 101739, at *6 (D.D.C. Jan. 9, 2008) (quoting *Smith–Haynie v. Dist. of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998)).  This means, then, that a court

can only dismiss a complaint under Rule 12(b)(6) on the grounds that a plaintiff has failed to exhaust its administrative remedies if the complaint itself states that the plaintiff has failed to exhaust its administrative remedies.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).

> b.    *Conversion To A Motion For Summary Judgment*

If the complaint does not contain an allegation that the plaintiff has failed to exhaust available administrative remedies, "the appropriate procedural mechanism for bringing a case to closure when there is no evidence in the record that the plaintiff exhausted the administrative remedies available to him is a motion for summary judgment under Federal Rule of Civil Procedure 56, not a motion to dismiss under Rule 12[.]"  *Shane*, 2008 WL 101739, at *7.  This is because reaching the exhaustion question for the purpose of resolving a Rule 12(b)(6) motion to dismiss would require the court "to refer to materials outside the pleadings[,]" which courts may do, but only if it "also convert[s] the motion to dismiss into one for summary judgment[.]"  *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011).

"The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court."  *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006) (citation omitted).  And "[i]n exercising this discretion, the 'reviewing court must assure itself that summary judgment treatment would be fair to both parties.'"  *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 85–86 (D.D.C. 2012) (quoting *Tele-Commc'ns of Key West, Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985)).  One means of providing the necessary assurance would be to give the parties notice of the potential conversion and provide them with an opportunity to present evidence in support of their respective positions.

*See Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997). "However, such notice need not be given where the court is satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete and dispositive." *Smith v. United States*, 518 F. Supp. 2d 139, 154 (D.D.C. 2007) (internal quotation marks and citation omitted). Thus, even if neither party has moved for summary judgment, where "both parties have cited documents or provided evidence outside the pleadings with respect to the issue of exhaustion," a court may fairly convert a motion to dismiss for lack of exhaustion to a motion for summary judgment under Rule 56. *Cost v. Soc. Sec. Admin.*, 770 F. Supp. 2d 45, 49 (D.D.C. 2011); *see also, e.g.*, *Munsell v. Dep't of Agric.*, 509 F.3d 572, 592 (D.C. Cir. 2007) (district court grant of 12(b)(6) motion to dismiss upheld as a grant of summary judgment because exhaustion was raised in the Government's motion to dismiss and then fully addressed by the parties).

   c.  *Motions For Summary Judgment On Exhaustion Grounds*

  Once a court has converted a motion to dismiss into a motion for summary judgment, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [thus] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). While the Court must view this evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's

favor, *see, e.g.*, *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23

(D.C. Cir. 2013), the non-moving party must show more than "[t]he mere existence of a

scintilla of evidence in support of" his or her position—"there must be evidence on

which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S.

at 252. Moreover, the non-moving party "may not rest upon mere allegation or denials

of his pleading but must present affirmative evidence showing a genuine issue for trial."

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal quotation

marks and citation omitted).

**B.      The United States Has Waived Its Immunity To Plaintiff's Lawsuit**

The applicable legal standards require this Court to determine at the outset

whether the United States has waived the defense of sovereign immunity in this context,

thereby consenting to suit, and if so, whether the Mackinac Tribe's claims fit within the

scope of any such waiver. *See United States v. White Mountain Apache Tribe*, 537 U.S.

465, 472 (2003). In this regard, the parties have trained their focus on the IRA (*see,*

*e.g.,* Pl.'s Opp. at 19 (asserting that the required express waiver of sovereign immunity

appears in that statute); Def.'s Reply at 21 (arguing that the IRA waives sovereign

immunity only for federally recognized tribes), but this Court finds that the IRA does

not itself contain language that amounts to a waiver of sovereign immunity. Instead,

Plaintiff's claims fall within the scope of the express waiver of sovereign immunity in

the Administrative Procedure Act.

1.      The Indian Reorganization Act Does Not Contain An Express
        Waiver Of Sovereign Immunity

Plaintiff points to section 476(d)(2) of the IRA—which specifically states that

"[a]ctions to enforce the provisions of this section may be brought in the appropriate

Federal district court[,]" 25 U.S.C. § 476(d)(2)—and based on that statutory verbiage, argues that "[t]here is no serious question that Congress has waived sovereign immunity to allow tribes to bring suit to compel the Secretary to hold an election under the IRA." (Pl.'s Opp. at 20.)  Plaintiff is correct that subsection (d)(2) of section 476 authorizes Indian tribes to bring lawsuits "to enforce the provisions" of the IRA in federal court; however, this language alone does not a sovereign immunity waiver make.  Indeed, as this Court reads subsection (d)(2), Congress is speaking to the power of a federal court to consider cases of this nature (actions to enforce the provisions of the IRA), and does not mention who may properly be named as a defendant in any such suit, much less expressly permit such enforcement actions to proceed against the United States. Consequently, subsection (d)(2) is, at most, ambiguous as far as the defense of sovereign immunity is concerned, and that section therefore fails to qualify as the type of unequivocal and explicit waiver of sovereign immunity that Plaintiff needs in order to maintain this action.  *See Nordic Vill.*, 503 U.S. at 33 ("Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." (internal quotation marks and citation omitted)).

Significantly, courts have long held that the mere fact that Congress expressly permits a certain claim to be brought in federal court does not suffice to show that Congress has abrogated the defense of sovereign immunity to that claim.  *See Munaco v. United States*, 522 F.3d 651, 653 n.3 (6th Cir. 2008) ("[J]urisdictional statutes . . . do not operate as waivers of sovereign immunity." (citation omitted)); *see also, e.g., Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (holding that 28 U.S.C. § 1331, which states that "district courts shall have original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States[,]" does not constitute a waiver of sovereign immunity); *Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) (holding that 28 U.S.C. § 1361, which provides that "district courts shall have original jurisdiction . . . to compel an officer or employee of the United States . . . to perform a duty owed to the plaintiff[,]" does not constitute a waiver of sovereign immunity).  Instead, courts considering whether a statutory grant of jurisdiction qualifies as a waiver of sovereign immunity must look for a clear and unequivocal statement that the United States—or its agencies or officers—can be sued as a defendant in the permissible action.

For example, the Administrative Procedure Act ("APA") specifically states that certain actions brought against the United States "shall not be dismissed nor relief therein be denied on the ground that it is against the United States" and that "the United States may be named as a defendant in any such action."  5 U.S.C. § 702; *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2204 (2012) (noting that this section of the APA is a waiver of sovereign immunity).  Similarly, the Federal Tort Claims Act ("FTCA") proclaims that "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances[.]"  28 U.S.C. § 2674; *see Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 485 (2006) (noting this section of the FTCA supplies a waiver of sovereign immunity).  The Tucker Act, too, expressly permits "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28

U.S.C. § 1491(a)(1); *see Mitchell*, 463 U.S. at 215 (1983) (noting that this section of the Tucker Act provides a waiver of sovereign immunity).

By contrast, a statute that says nothing about whether the United States can be sued under its provisions and instead generally authorizes the filing in federal court of an action to enforce provisions of the statute merely connotes a grant of federal jurisdiction that does not rise to the level of an express sovereign immunity waiver. *See, e.g.*, *Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 850–55 (9th Cir. 2012) (finding no waiver of sovereign immunity under the civil liability provision of Foreign Intelligence Surveillance Act, where that provision expressly permitted suit against "any person who committed such violation" and the statutory definition of "person" did not include the United States); *In re Al Fayed*, 91 F. Supp. 2d 137 (D.D.C. 2000) (similar).  In *Geronimo v. Obama*, 725 F. Supp. 2d 182 (D.D.C. 2010), the district court considered statutory language in the Native American Graves Protection and Repatriation Act ("NAGPRA") that is substantially similar to the provision Plaintiff relies on here, and rejected the plaintiff's contention that a NAGPRA provision authorizing "an action in district court to seek 'such orders as may be necessary to enforce the provisions of th[e] Act'" constituted a waiver of sovereign immunity, concluding instead that this language merely "provides for a private right of action[.]" *Id.* at 185; *see also id.* ("NAGPRA does not provide a waiver of sovereign immunity.").

So it is here.  Again, subsection (d)(2) of the IRA says only that "[a]ctions to enforce the provisions of this section may be brought in the appropriate Federal district court."  25 U.S.C. § 476(d)(2).  Unlike the language that Congress used in the APA, the FTCA, or the Tucker Act, subsection (d)(2) does not state that the United States can be

made a defendant in any such action; in fact, subsection (d)(2) makes no mention of the United States at all.  And without such a clear statement abrogating the sovereign immunity of the United States, this Court cannot conclude that a waiver of sovereign immunity is "unequivocally expressed in the statutory text" of subsection (d)(2).  *Lane*, 518 U.S. at 192; *see also Brown v. Sec'y of Army*, 78 F.3d 645, 650 (D.C. Cir. 1996) ("[W]e must presume that a Congress that intends to waive sovereign immunity is aware of the principles that will govern our reading of the waiver. Therefore, having said that we would take the legislature strictly at its word when it specifies whether and to what extent it waives sovereign immunity, we are bound to infer that it intended no more than it said.").

2.  The Administrative Procedure Act Waives Defendant's Sovereign Immunity And Applies To Plaintiff's Action

The absence of an express sovereign immunity waiver in subsection (d)(2) of the IRA means that the Mackinac Tribe "must look beyond the jurisdictional statute for a waiver of sovereign immunity with respect to [its] claim."  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Plaintiff has not done any such thing in its briefing and argument, but Defendant briefly suggests—and then quickly dismisses—the possibility that the APA might supply the necessary sovereign immunity waiver.  (*See* Def.'s Mem. at 22 n.5 (noting with respect to 5 U.S.C. §§ 701–06 that "[t]he APA provides a limited waiver of the United States' sovereign immunity[,]" but asserting that Plaintiff "is precluded from relying on" this waiver due to its failure to exhaust administrative remedies).  The APA expressly and unequivocally provides that, where a plaintiff alleges that "an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority," the case "shall not be dismissed nor

relief therein be denied on the ground that it is against the United States[.]" 5 U.S.C. § 702.[8]  And this Court has carefully considered whether the APA's unequivocal sovereign immunity waiver is available to the Mackinac Tribe with respect to the claims it seeks to advance in this instant action.  The Court has concluded that the APA's waiver applies to the Mackinac Tribe's action for at least two reasons.

First, because the APA's waiver of sovereign immunity is available to all who satisfy the applicable statutory criteria, even when the plaintiff has not brought its claim against the United States under, or pursuant to, the APA.  *See Z Street, Inc. v. Koskinen*, No. 12-CV-0401 (KBJ), 2014 WL 2195492, at *10 (D.D.C., May 27, 2014)("[A] suit need not have been brought pursuant to the APA in order to receive the benefit of that statute's sovereign immunity waiver; indeed, the 'APA's waiver of sovereign immunity applies to any suit whether under the APA or not.'" (quoting *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996)) (emphasis omitted)).  By its own terms, the waiver applies (1) when a plaintiff claims that "an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority,"

---

[8] The relevant statutory provision states in full:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States:  *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

and (2) when the plaintiff "seek[s] relief other than money damages." 5 U.S.C. § 702. Such is the case here, given that Plaintiff Mackinac Tribe alleges in the instant complaint that the Secretary failed to fulfill her statutory duty to call a constitutional election for Plaintiff when requested, and the complaint requests a judgment ordering the Secretary to conduct that election. (*See* Compl. ¶¶ 40–45.)

Second, although Defendant argues that Plaintiff needs to fulfill an *additional* requirement in order to be able to rely on the APA's sovereign immunity waiver— namely, that the agency action that Plaintiff seeks to challenge must be a "final" agency action (*see* Def.'s Mem. at 22 n.5 ("The APA provides a limited waiver of the United States' sovereign immunity by providing 'a right to judicial review of all 'final agency action for which there is no other adequate remedy in a court.'" (quoting *Bennett v. Spear*, 520 U.S. 154, 175 (1997)[9]—the D.C. Circuit rejected this very argument in *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006). *See id.* at 187 (holding that APA § 702's waiver of sovereign immunity "applies regardless of whether [the challenged agency action] constitutes 'final agency action'").

Plaintiff Mackinac Tribe is here seeking to proceed under the IRA, and it is sufficient that its complaint alleges that the agency has failed to act where the law provides it must; Plaintiff need not identify a final agency action in order to avail itself of APA's sovereign immunity waiver, despite Defendant's assertions to the contrary. The Court is mindful, however, that "other limitations on judicial review or the power

---

[9] In referencing "final agency action," Defendant refers to Section 704 of the APA, which states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Thus, in Defendant's view, "[p]laintiff is precluded from relying on the only potentially available waiver of sovereign immunity because it has not exhausted the administrative remedies that are necessary to consummate Interior's decision-making process." (Def.'s Mem. at 22 n.5.)

or duty of the court to dismiss any action or deny any relief on any other appropriate

legal or equitable ground" may nevertheless preclude this action.  5 U.S.C. § 702.  The

Court therefore must proceed to consider Defendant's alternative assertion that the

complaint must be dismissed because Plaintiff has not exhausted its administrative

remedies.  (*See* Def.'s Mem. at 30 ("Plaintiff's complaint should be dismissed because

Plaintiff has not exhausted its administrative remedies by obtaining a final

determination regarding its recognition.").)

**C.      Plaintiff Needed To Exhaust Its Administrative Remedies Prior To Bringing This Lawsuit And Has Indisputably Failed To Do So**

The administrative path to receiving the recognition and reorganization

assistance that Plaintiff Mackinac Tribe seeks is clear: the Interior Department requires

Indian groups to apply for these benefits pursuant to the Part 83 Process.  *See* 25 C.F.R.

pt. 83, *Procedures for Establishing That an American Indian Group Exists as an Indian*

*Tribe*; *see also* 25 C.F.R. pt. 81, *Tribal Reorganization Under a Federal Statute*.

Plaintiffs do not dispute that the Part 83 Process is the mechanism by which Secretary

now recognizes tribes and consequently determines whether Indian groups are eligible

for federal benefits such as reorganization, yet Plaintiff concedes that it has not pursued

those regulatory procedures.  (*See* Hr'g Tr. at 49:8).  Instead, Plaintiff appears to assert

that it has exhausted its administrative remedies because the complaint specifies that

the tribe approached the Secretary to request an election pursuant to the IRA and "the

Secretary did nothing."  (*See* Pl.'s Opp. at 35 (noting that "[t]he Secretary didn't even

make a formal decision that the tribe was ineligible to reorganize under the statute, nor

informally respond to the tribe"); *but see* Hr'g Tr. At 36:2–4 (noting that "when we

asked the status of that petition, the department sent a letter saying that the group is inactive now primarily because the guy [who sent the letter] died").)

To the extent that Plaintiff maintains that its election request was sufficient exhaustion and that it need not have undertaken the Part 83 Process under the circumstances presented here (*i.e.,* because it believes that the tribe already has been federally recognized pursuant to a treaty or otherwise), no less an authority than the D.C. Circuit has strongly suggested otherwise.  In *James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132 (D.C. Cir. 1987), a group of Gay Head Indians sued for a declaratory judgment that the Interior Department's failure to include the Gay Heads on its list of federally recognized Indian tribes was contrary to law, as well as an order directing the Secretary to place the Gay Heads on the list of recognized tribes.  *See id*. at 1135.  The Secretary moved to dismiss the complaint on the ground that the Gay Heads had not pursued the Part 83 Process and thus had failed to exhaust their administrative remedies for receiving the federal recognition the lawsuit requested.  *See id*.  Much like the Plaintiffs before this Court, the Gay Heads argued that "it would be redundant for them to exhaust administrative channels in an attempt to obtain federal recognition" because the Gay Heads had already been recognized in a report that a Presidential Commission had prepared in 1822.  *See id*. at 1133, 1136–37.  (*See also* Pl.'s Opp. at 28–29.)  The D.C. Circuit disagreed, affirming the district court's dismissal of the Gay Heads' complaint, because the Gay Heads had not exhausted their administrative remedies by pursuing the administrative recognition process.  *See id*. at 1138.  In so holding, the *James* Court explained that "requiring exhaustion of the Department of the Interior's procedures for tribal recognition[] before permitting

judicial involvement" serves the purposes of the exhaustion doctrine in that "requiring exhaustion allows the Department of the Interior the opportunity to apply its developed expertise in the area of tribal recognition[,]" and "the factual record developed at the administrative level would most assuredly aid in judicial review should the parties be unsuccessful in resolving the matter[.]"  *Id*; *see also Avocados Plus*, 370 F.3d at 1247 (noting that the exhaustion doctrine serves the functions of "affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review." (internal quotation marks and citation omitted).

The Circuit's reasoning in *James* clearly applies to the circumstances presented here.  Although Plaintiff Mackinac Tribe may have approached the Secretary to ask for an election pursuant to the IRA, and thereby invoked the administrative process to some extent, it did not ask the agency the *relevant* question for the purpose of the administrative process—*i.e.,* whether the Mackinac Tribe satisfies the Part 83 requirements for federal recognition—which, according to the agency, is an indispensible precursor to any request that the Secretary call an election for reorganization of the tribe.[10]  It is precisely because there is no genuine dispute that the Mackinac Tribe failed to seek an agency decision regarding recognition before it filed its lawsuit in federal court that this Court concludes summary judgment must be entered for Defendant.  Indeed, the Interior Department's unique expertise in Indian affairs makes the agency better suited than the courts to determine whether or not Plaintiff

---

[10] This Court need not, and does not, reach the merits of the agency's contention that recognition through the Part 83 process is the *only* vehicle by which an Indian group is entitled to the benefits of reorganization under the IRA.  (*See* Def.'s Mot. at 25–34.)  Instead, the Court here holds only that a group such as the Mackinac Tribe must *first* proceed through the administrative process for formal recognition before it can bring a lawsuit that requests recognition and reorganization by court order. *See infra* note 11.

should be federally recognized as an Indian tribe in the first instance, and the factual record that would be developed during the agency's review of plaintiff's claim would be useful to the court in reviewing of the agency's decision, *see James*, 824 F.2d at 113. Therefore, in this Court's view, "the policies underlying the exhaustion doctrine dictate" this result. *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 550 (10th Cir. 2001); *see also Sandy Lake Band*, 2011 WL 2601840, at * 4 (noting that "requiring an entity seeking an IRA election to first request federal acknowledgment" ensures that the evidence the tribe offers in support of its claim "will be presented to the appropriate agency with the requisite expertise and established regulatory process.").[11]

## III.   CONCLUSION

Although sovereign immunity poses no bar to the instant action, the Mackinac Tribe has admittedly failed to request recognition through the Department of Interior's Part 83 Process.  Exhaustion of existing administrative remedies must be accomplished prior to filing a suit of this nature.  *See James*, 824 F.2d at 1138.  Consequently, as set

---

[11] It bears repeating that this Court is not suggesting that the agency necessarily is correct when it argues that the sole means of recognition that is cognizable under the IRA is the recognition that results from the Part 83 Process.  *See* Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108 Stat. 4791, Section 103 (1994) (codified at 25 U.S.C. § 479a) ("Indian tribes presently may be recognized by Act of Congress; by the administrative procedures set forth in part 83 of the Code of Federal Regulations denominated 'Procedures for Establishing that an American Indian Group Exists as an Indian Tribe;' or by a decision of a United States court.").  Instead, the Court merely holds that before a plaintiff may file a lawsuit seeking to compel the Secretary to call a constitutional election pursuant to the IRA, the plaintiff must first pursue the Secretary's recognition process.  If the recognition process results in a decision adverse to Plaintiff's position, Plaintiff may challenge the Secretary's decision—as well as the method by which she reached that decision—in federal court, *see* 5 U.S.C. § 706 (a court shall "compel agency action unlawfully withheld" and "hold unlawful and set aside agency action, findings and conclusions" that the court finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"), and in such a case, the administrative record will undoubtedly aid the Court's review of the agency's decision.  Thus, by requiring "exhaustion" this Court refers only to Plaintiff's obligation to *seek* recognition through the Part 83 Process, not to any obligation to *receive* such recognition.

forth in the accompanying order, Defendant's Motion for Summary Judgment (as this Court has now construed its Motion to Dismiss) will be **GRANTED**.

DATE: March 31, 2015                              *Ketanji Brown Jackson*
                                                  KETANJI BROWN JACKSON
                                                  United States District Judge